Martin, J.
delivered the opinion of the court. The plaintiff claims the defendant as a slave, stating her to be a mulatto woman born from a negro woman the slave of his testator: avers that she pretends to be free and is about to sail for the island of Cuba. Her answer denies every fact in the petition: judgment has been given for her, in the district court, and the plaintiff has appealed.
The case comes upon a statement of facts and a bill of exceptions.
The statement apprizes us that at the trial, before a jury, the plaintiff introduced a bill of sale from his testator to Gardette, and a reconveyance from Gardette: the first, of March 20th, 1809, the other of April 17th of the same year.
The defendant first introduced a letter of the plaintiff’s testator of October 11, 1808, containing the following expressions: ‘Robinette, a “child of my house having always acted in a man“ner different from that of girls of her color, “I am happy that she finds the opportunity of *578 “securing her happiness, especially at the eve “of the day, when her young mistress is under “the necessity of calling her back near her, or “of replacing her.” The testator then offers her to Gardette for 1000 dollars.
2. A bill of sale of Robinette from James Mather, stiling himself attorney in fact of George Mather and Aurore, the wife of said George, one of the testator’s daughters, of July 9, 1810, to A. Abat.
3. Another, from the latter to A. D. Tureau, of the 22d of December, of the same year.
4. One from the latter to the defendant’s mother now, and then, a free negro woman, of Sept. 10, 1811.
5. A deed of emancipation of the defendant, dated July 21, 1812.
6. The record of a suit, instituted by George Mather and wife Against Abat, for a part of the price of the defendant.
Gardette, a witness introduced by the defendant, deposed, that he had known her for ten years past—that she is the person he bought from the plaintiff’s testator—that she always passed as the plaintiff’s testator’s slave, and he hired her as such; that he believes the testator knew of the sale of the defendant by Mather to Abat, because he was told so by the family, *579 and the bargain was made, at the house of one of the testator’s daughters.
Lozano, another witness, introduced also by the defendant, deposed that the defendant had been in the enjoyment of her freedom for some years past—that Gardette, the other witness, lives with, and has three or four children by her.
The plaintiff proved that he had taken up and confined the defendant, but that she was liberated on an habeas corpus.
To the introduction of the deed of emancipation, as evidence, the plaintiff objected it appearing illegal, on its face. The defendant was stated in it to be of the age of twenty four, a fact which was not while the law forbids the emancipation under that of thirty. 1807, 18, sect 2.
A bill of exceptions was taken to the opinion of the court overruling this objection, and in sealing it, the judge stated his reasons as follows: “I allowed the act of emancipation to go “to the jury for what it was worth, altho’ at “the time I considered it immaterial to the real “issue of the case whether it was legally exe“cuted or not. Trudeau was plaintiff, and I *580 “ charged the jury that if his testator had part-“ ed with his title to the defendant, he had no a " right to recover—that the validity of the act of “ emancipation was a question between the per-“ son who made it, or his creditors, and the de-“ fendant, and not to be tried in this cause, “ therefore not for their consideration.”
We think the judge’s view of the question, at the time, which out of the hurry of a trial, he would himself have considered erroneous, an incorrect one. If the evidence was immaterial to the issue, why admit it? We are of opinion that the document, had it been a lega lone, would have been a most material, a sine quâ non, piece of evidence. But we think it was illegal, null and void; the officer who received it having done to, in contempt, if he was not ignorant, of the law.
A slave, considered as an object of property, is a thing, and as such not entitled or capable to resist the exercise of ownership on him (as an actor in a suit, or on a writ of habeas corpus, nor as a defendant) on account of a want of title in the person who claims or uses him as his property. If he bring suit, or be sued on a claim of property on him, the issue can only be liber vel non. If he prove his freedom, no title *581 can exist in his opponent—till his freedom be proven, there is no person to stand in judgment with the claimant, who therefore could neither avail himself of, nor be concluded by, the judgment. Civil Code 40, art. 19. Black Code, 1816, 33, sect. 16.
Here the defendant clearly appears to have been a slave, and there is no evidence of emancipation. If the plaintiff has parted with his title to a known person, who is unwilling to incur the risk and expence of a trial, and does not insist on his right, the slave has no capacity to resist. If the owner be unknown, it is as if he did not exist. If he be known and absent, the court below might have appointed a person to interfere in his behalf.
Owners ought not to be subjected to support or exhibit their titles, contradictorily with their slaves. Whenever the issue liber vel non is found in their favour, the court must give judgment for them, without any inquiry into the title. As this inquiry would not avail them against other claimants, it would be wrong to prejudge, by trying the claim, the rights of others.
It is therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the *582 plaintiff do recover the defendant Robinette, and that she return to him as his slave.
Hennen for the plaintiff, Davezac for the defendant.